**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

PAULINO MARRERO SUAREZ,
Petitioner,
v.

JEREMY CASEY, Warden, Imperial Regional Detention Facility,
Respondent.

Case No.: 3:26-cv-02332-BTM-GC

**ORDER DENYING MOTION TO ENFORCE JUDGMENT**

**[ECF NO. 11]**

On April 30, 2026, the Court granted in part Paulino Marrero Suarez's petition for the writ of habeas corpus. (ECF No. 7 ("Order").) The Court ordered the Government to provide him with an individualized bond hearing before a fair, neutral, and open-minded Immigration Judge ("IJ"), among other requirements. (*Id.* at 2.) A bond hearing was held for Marrero Suarez on May 14 and 15, 2026. (ECF No. 11 ("Motion"), at 4.) The IJ determined that Marrero Suarez was a flight risk and denied bond. (ECF No. 11-A, Ex. A, at 34.) On July 7, 2026, Marrero Suarez moved this Court to enforce its order.

//

//

//

## I. BACKGROUND

Petitioner Marrero Suarez is a citizen of Cuba who entered the United States without inspection in December 2019. (ECF No. 1 ("Pet."), at 7.) Upon entering the country, Marrero Suarez applied for political asylum. (*Id.*) Marrero Suarez's asylum claim was denied and he appealed the denial of asylum. The appeal is currently pending. (Mot., 4.) He was arrested in February 2026 while traveling from Arizona to California and has been detained since then in Imperial Regional Detention Facility. (Pet., 7.) He is currently detained under 8 U.S.C. § 1226(a).

On April 13, 2026, Marrero Suarez filed a habeas petition in this district. On April 30, 2026, the Court ordered the Respondent to provide Marrero Suarez an individualized bond hearing, at which the Government bore the burden (by clear and convincing evidence) of proving that Marrero Suarez posed a danger to the community or a risk of flight. (Order, 2.)

The IJ held a bond hearing on May 14 and 15, 2026 and denied Marrero Suarez bond. The IJ found that the Government proved by clear and convincing evidence that Marrero Suarez posed a risk of flight. (Ex. A, 34.) The IJ primarily found that Marrero Suarez was a flight risk because he said he "would rather die in the United States than go to Cuba" and that he "has expressed a strong desire to not leave the United States and to not follow court orders." (*Id.* at 33.) The Respondent thus urges this Court to deny the motion. In the Respondent's view, because Marrero Suarez received the bond hearing ordered by the Court, the motion must be denied. Further, the Respondent contends that because Marrero Suarez has appealed to the Board of Immigration Appeals ("BIA") the IJ's denial of bond, the motion should be denied for failure to exhaust administrative remedies.

In Marrero Suarez's view, the IJ relied on facts that do not pass constitutional muster to support a flight determination; cited to constitutionally insufficient evidence that did not meet the high burden of establishing risk of flight by clear and convincing evidence; did not consider the evidence as a neutral, fair, and open-minded judge; and did not consider

alternatives to detention. Thus, Marrero Suarez argues that the bond hearing violated both this Court's order and due process. Therefore, Marrero Suarez requests immediate release.

## II. LEGAL STANDARD

District courts have the authority to review compliance with prior orders granting habeas relief, including orders for bond hearings. *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011). The party challenging compliance with the bond order bears the burden of proof, and ambiguities are resolved in favor of the non-moving party. *C.A.R.V. v. Wofford*, No. 25-cv-01395, 2026 WL 341823, at *3 (E.D. Cal. Jan. 29, 2026).

"When questions require a close review of agency-found facts," like an IJ's finding of dangerousness or flight risk in a bond hearing, "we review for an abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *see also Loba L.M.*, No. 25-cv-00611, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (applying abuse of discretion standard to review compliance with an order for bond hearing on habeas); *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *8 (E.D. Cal. Oct. 22, 2025) (same). The Court's review for abuses of discretion is limited to those who allege "violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions." *See Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (quoting *Strickland v. Morton*, 519 F.2d 467, 471 (9th Cir. 1975)).

Nevertheless, the government's discretion in immigration bond hearings is constrained by the requirements of due process. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). A court abuses its discretion "when it applies the wrong legal standard or when its findings of fact or its application of law to fact are 'illogical, implausible, or without support in inferences that may be drawn from the record.'" *United States v. Chichande*, 113 F.4th 913, 919–20 (9th Cir. 2024) (*quoting Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015)).

Put another way, the Court must be "left with a definite and firm conviction" that the IJ "committed a clear error of judgment" to find abuse of discretion. *United States v.*

*Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009)).

## III. DISCUSSION

### A. Administrative Exhaustion

As a threshold matter, Marrero Suarez was not required to appeal to the BIA the IJ's denial of bond in order to bring this motion challenging the Respondent's compliance with the prior grant of habeas relief. In the Court's view, the issue here is whether the Respondent complied with the Court's April 30, 2026 order and judgment. Because that question—whether the Respondent complied with the prior court order and judgment—is a legal question for the Court, rather than the BIA, exhaustion was not required. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (affirming waiver of prudential exhaustion where the challenge at issue raised pure questions of law); *Massachusetts v. Lyng*, 893 F.2d 424, 428 (1st Cir. 1990) ("Exhaustion is not mandated where the issue is a matter of law as to which specialized administrative understanding plays little role, or where further agency proceedings would be futile."); *Robinson v. Block*, 869 F.2d 202, 207 (3d Cir. 1989) ("Exhaustion of administrative remedies is not required where, as here, the issue presented is strictly legal.") (quotation marks and citation omitted); *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 1082648, at *2 (N.D. Cal. Mar. 6, 2020) (finding exhaustion "futile" where "[a]ll that remains is [a] legal question").

### B. Due Process

The Court rules that the Respondent complied with the Court's prior grant of habeas relief. The Court's order and judgment required the Respondent to hold a bond hearing at which the Government bore the burden (by clear and convincing evidence) of proving that Marrero Suarez posed a danger to the community or a risk of flight. The Court's order thus required the Government to inquire into Marrero Suarez's propensity for dangerousness or flight.

The Court does not find that the IJ here used the wrong legal standard. At the outset of the hearing, the IJ stated that the "burden has been shifted under the habeas order to the

government to show by clear and convincing evidence that the respondent is a risk of flight or danger to the community." (Ex. A, 2.) The IJ later restated that the "government carries the burden in this case to show by clear and convincing evidence that the respondent is a risk of flight or danger to the community." (*Id.* at 31.) This was the standard set by the Court in its grant of Marrero Suarez's habeas petition.

The Court looks to the IJ's factual findings and application of those facts to the legal standard. To determine if a noncitizen is eligible for bond, an IJ weighs the *Guerra* factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Since *Guerra*, courts have used the "probative and specific" evidence requirement to determine whether an IJ's bond determination comports with due process constraints. *Bayani v. LaRose*, No. 26-cv-0266, 2026 WL 1270059, at *6 (S.D. Cal. May 8, 2026).

Here, the IJ did not find that Marrero Suarez was a danger. (Ex. A, 31.) Addressing only risk of flight, he concluded that because Marrero Suarez "would refuse to deport if ordered removed from the United States" and "would not follow court orders" he denied bond as a risk of flight. (*Id.* at 34.) He found that both Marrero Suarez's daughter and wife live in Mexico and have no status in the United States. (*Id.* at 32.) He also found that Marrero Suarez "does not seem to have or share a close relationship" with his family members in the United States. (*Id.*) Lastly, he found that Marrero Suarez's appeal of the denial of his asylum claim was "speculative at best." (*Id.* at 33.) Based on these factors, the IJ found Marrero Suarez to be a flight risk.

//

In considering flight risk, the IJ considered evidence submitted by Marrero Suarez and the Respondent as well as testimony from Marrero Suarez. The IJ then applied each *Guerra* factor to the evidence before him. Marrero Suarez has not proffered any evidence that the testimony or evidence considered by the IJ was inadmissible or unconstitutional. When the IJ asked Marrero Suarez if he would comply with a final order of removal if he were to lose his appeal, he responded "I can't return to Cuba." (Ex. A, 26.) After the IJ asked for clarification, Marrero Suarez re-iterated "I can't go back to my country." (*Id.* at 27.) Marrero Suarez argues that to the extent that there was any ambiguity in his answer, that the IJ did not make any further inquiry as a fair, neutral, and open-minded judge. (Mot., 14.) Yet, at the bond hearing, the IJ asked Marrero Suarez whether he would comply if ordered deported several times and even re-framed the question by asking whether he would comply if ordered deported to Cuba specifically to which Marrero Suarez replied, "For Cuba, no. I would prefer to die here." (Ex. A, 28.)

The IJ acknowledged that he specifically gave weight to Marrero Suarez's testimony that he would not leave if ordered removed to Cuba. (*Id.* at 33.) This determination was not an abuse of discretion. IJs retain discretion in immigration bond proceedings. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."); *see also Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1001 (N.D. Cal. 2018) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40) ("An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations."). Each finding by the IJ was drawn from the record and connected to the *Guerra* factors.

Furthermore, Marrero Suarez admitted violating an immigration directive, when he first entered illegally and was removed, that he had to apply for asylum in Mexico. Nevertheless, he re-entered illegally about two weeks later. (ECF No. 13 ("Opp."), at 4.) This shows his violation of immigration directives of which he disagrees and supports the IJ's conclusion that he would not show up if ordered removed to Cuba.

Marrero Suarez also argues that the IJ failed to consider alternatives to detention. (Mot., 18.) However, the record indicates that the IJ did implicitly inquire about factors that are pertinent to considering alternatives. Marrero Suarez informed the IJ that his wife resides in Mexico. (Ex. A, 9.) He also stated that he had been renting an apartment but had since been evicted. (*Id.* at 11.) And lastly, he specified his business bank account had been overdrawn. (*Id.* at 11–12.) The question of alternatives was thus encompassed within the broader question of whether detention remains warranted.

Considering all these factors together, the Court finds that the IJ did not abuse his discretion. He placed the burden on the Government here to prove Marrero Suarez's flight risk by clear and convincing evidence at the bond hearing and he appropriately applied the *Guerra* factors. The Court is not left with a definite and firm conviction that the IJ "committed a clear error of judgment." *Ressam*, 679 F.3d at 1086 (citation omitted). Marrero Suarez has cousins who live in the United States. If they posted their property, that may result in a sufficient deterrent to his flight. Also, perhaps Marrero Suarez can arrange to be removed to Mexico where his wife and daughter reside, if his appeal of denial of asylum fails. He would have a much stronger case for a bond if he was going to be removed to Mexico. None of these options were offered to the IJ by Marrero Suarez. This Order is without prejudice to Marrero Suarez seeking a custody redetermination or review. Because the Court finds that the bond hearing did not violate due process, it need not reach the issue of release as a remedy here.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion to enforce judgment.

**IT IS SO ORDERED.**

Dated: September 25, 2026

Honorable Barry Ted Moskowitz
United States District Judge